The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times herein.
3. That ESIS, Inc. provided workers' compensation coverage for the defendant-employer at all relevant times herein.
4. The parties entered into a Form 21 Agreement. Under the terms of the said agreement, defendants admitted that plaintiff had sustained the compensable occupational disease of tendonitis of both arms on or about August 10, 1994.
5. Plaintiff's average weekly wage was $281.60 per week, yielding a weekly compensation rate of $187.74.
5. The issues to be determined are: whether plaintiff is permanently and totally disabled as a result of her initial injury, and, if so, what, if any, additional benefits is she entitled to receive?
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was a thirty-year-old woman with a high school education with some community college training in Lotus.
2. Plaintiff was employed by defendant primarily to key in returned checks on the computer, and had performed this job for almost three years at the time she developed her alleged occupational disease. In this position, plaintiff would key in between 2,000 and 5,000 checks per day. Plaintiff would have to pick up the checks and key in the checks by turning and flipping the checks one after the other. Plaintiff was picking up, turning, keying in the information and flipping over each check approximately every 10 seconds.
3. Plaintiff began to experience pain and difficulty with her wrist and arms in the summer and fall of 1994. In August of 1994, plaintiff contacted Dr. Bowman concerning the difficulties she was experiencing with her hands, wrist and arms. Dr. Bowman prescribed splints for her wrists and arms.
4. Plaintiff reported the difficulties she was experiencing to her supervisor. Her supervisor did not assist plaintiff's attempts to seek medical treatment; therefore, plaintiff went to see Dr. Hayes on her own.
5. Dr. Hayes took plaintiff out of work for a week, gave her some medication, placed her in physical therapy and gave her a splint for her left arm. He returned her to work with the restriction that she not perform her regular duties. Initially, plaintiff was placed in other positions, but later she was returned to her regular position. When she returned to her regular position, she again experienced difficulties with her wrists and arms.
6. Plaintiff continued to have difficulty with her arms even though she was receiving treatment from Dr. Hayes. Dr. Hayes referred her to Dr. Gary Poehling, chairman of orthopedic surgery at Bowman Gray School of Medicine. Plaintiff told Dr. Poehling that she was experiencing bilateral upper extremity pain which had started in July 1994. Her pain had initially started in her wrist and continued up her arms into her neck. She informed him that she had initially seen Dr. Bowman who had ordered her to use a wrist splint and gave her medication. She then saw Dr. Hayes, who prescribed anti-inflammatory medication, vitamins and a wrist splint for her left arm; plaintiff's right arm was already in a splint. Plaintiff indicated that she was given cortisone injections in her wrists and shoulders, along with physical therapy, but she did not get relief from her pain and difficulties.
7. Dr. Poehling diagnosed plaintiff's condition as reflex sympathetic dystrophy or chronic regional pain syndrome. When asked if plaintiff's position with defendant-employer caused her condition, Dr. Poehling indicated that if her position was a highly repetitive one, it could have caused her condition. Plaintiff's position was a highly repetitive position. Each time plaintiff performed another position she did not have the same difficulties with her wrist, arms, shoulders and neck, but when she returned to her normal position she experienced the same difficulties.
8. Dr. Poehling placed plaintiff under the restrictions of no repetitive work, with the ability to sit frequently, no climbing, no squatting, no kneeling and no crawling. Plaintiff can pull up to 26 pounds occasionally and pull up to 13 pounds frequently with no constant pulling. Plaintiff can push 26 pounds occasionally and push 13 pounds frequently with no constant pushing. Plaintiff can carry up to 18 pounds occasionally and carry 9 pounds frequently with no constant carrying. Also, plaintiff can lift with a 12 pounds limit with no constant overhead lifting. Dr. Poehling also indicated that plaintiff needed to be retrained.
9. Dr. Poehling gave plaintiff a twenty-five percent (25%) permanent partial disability rating to her upper extremities.
10. Plaintiff continued to have difficulties with pain, and she was seen by rheumatologist Dr. Glenn Alan McCain on January 18, 1996. Dr. McCain found that plaintiff was still experiencing pain in her upper extremities, but that she was now experiencing pain throughout her body. He diagnosed plaintiff's condition as fibromyalgia. Dr. McCain indicated that plaintiff could have developed fibromyalgia as a result of her initial injury, but he was not sure because the medical records that he was provided did not indicate whether plaintiff's initial treating doctors had performed the necessary tests to determine whether she did or did not have fibromyalgia. He also noted that fibromyalgia normally starts as another condition and then progresses into being fibromyalgia. He did note that plaintiff continues to have difficulty with her upper extremities and that symptom is constant throughout her course of treatment whether with him or her prior doctors. Dr. McCain recommended that plaintiff participate in a pain treatment program, as well as a rehabilitation program.
11. Dr. Stephen J. Naso, Jr., an expert in hand and extremity surgery, saw plaintiff for a second opinion for defendants. Dr. Naso also found that plaintiff was suffering pain in her upper extremities. He diagnosed her condition as diffuse tendonitis, and he disagreed with the diagnosis of Drs. Poehling and McCain. Dr. Naso also believed plaintiff was unable to perform her regular job duties and needed vocational rehabilitation and retraining for a less stressful and less repetitive job.
12. The Commission gives greater weight to the testimony of Dr. McCain as the treating physician, and finds that the fibromyalgia is causally related to plaintiffs' initial repetitive strain injury.
13. All of plaintiff's doctors agree that she is still experiencing pain and difficulty as the result of her repetitive job duties with the defendant-employer. Although the doctors do not agree on a diagnosis, they do agree and the Commission finds that she is unable to perform her regular job that she needs continuing treatment, therapy and retraining. Defendants provided vocational rehabilitation to plaintiff for approximately six months, from November 1996 until April 1997, when she had surgery for an unrelated back condition.
14. On January 18, 1996, Dr. McCain indicated and the Commission finds that plaintiff was not at maximum medical improvement because she had not received the medical care he recommended.
15. Plaintiff continues to be temporarily totally disabled as a result of her admittedly compensable injury and is in need of continued medical treatment, pain management and vocational rehabilitation. There is insufficient medical evidence of record to prove by the greater weight of the evidence that plaintiff is permanently and totally disabled.
16. Defendants are entitled to have plaintiff present to the doctor of their choice for a second independent medical evaluation.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As the result of the compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $187.74 per week from the date of her disability to the date of the hearing before the Deputy Commissioner and continuing until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to payment by defendants for such medical treatment, including a pain management program, as is reasonably required as a result of her occupational disease to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25, 97-59.
3. Plaintiff has failed to prove by the greater weight of the evidence that she is permanently and totally disabled. N.C. Gen. Stat. § 97-29.
4. Defendants are entitled to have the plaintiff present for an additional independent medical evaluation with the physician to be selected by the defendants. N.C. Gen. Stat. § 97-25.
5. Plaintiff is in need of vocational rehabilitation and retraining which shall be provided to plaintiff by defendants as recommended by her physicians. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's temporary total disability benefits shall continue at the compensation rate of $187.74 per week until further order of the Industrial Commission.
2. Defendants shall pay all reasonable medical expenses, including a pain management program, incurred or to be incurred in the future by plaintiff as a result of her compensable occupational disease when bills for the same have been submitted through the defendants and approved according to procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and as a result plaintiff's counsel shall receive every fourth compensation check.
4. Defendants shall provide retraining and vocational rehabilitation, as recommended by her physicians. Plaintiff is hereby ORDERED to comply with any vocational rehabilitation offered by defendants.
5. Plaintiff is ORDERED to submit to an additional independent medical evaluation with a physician selected by the defendants.
6. Each side shall pay its own costs.
This the ___ day of September 1999.
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/jth